UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| INTERLOGIC OUTSOURCING, INC., *et al.*,[1] | Case No. 19-31445 |
| Debtors. | (Joint Administration Requested) |

UNITED STATES TRUSTEE'S OBJECTION
TO DEBTORS' *EMERGENCY* MOTION SEEKING ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING DEBTORS TO PAY CERTAIN PREPETITION
CLAIMS HELD BY CRITICAL VENDORS AND (II) GRANTING RELATED RELIEF

In support of her Objection (the "Objection") to the Debtors' Emergency Motion Seeking Entry of Interim and Final Orders (I) Authorizing Debtors to Pay Certain Prepetition Claims held by Critical Vendors and (II) Grating Related Relief (the "Motion"), Nancy J. Gargula, the United States Trustee for Region 10  (the "U.S. Trustee"), by and through her undersigned counsel, states as follows:

## INTRODUCTION

The Court should deny the Debtors' Motion or defer entry of the proposed interim and final orders until the Debtors provide adequate information to support the Motion and more adequate notice to creditors and parties in interest.  Concurrent with this Motion, the Debtors also filed emergency motions seeking to extend the time to file Schedules and Statements of Affairs and to file a consolidated creditor matrix, and consolidated list of the top 30 largest

---

[1] The Debtors in these chapter 11 cases include:  Interlogic Outsourcing, Inc.  ("Interlogic") (Case No. 19-31445); IOI Payroll Services, Inc. ("IOI Payroll") (Case No. 19-31446); TimePlus Systems, LLC ("TimePlus") (Case No. 19-31451); IOI West, Inc. (Case No. 19-31447); Lakeview Technology, Inc. (Case No. 19-31449); Lakeview Holdings, Inc. (19-31448); and ModEarn, Inc. (Case No. 19-31450).  The location of the Debtors' headquarters is: 1710 Leer Drive, Elkhart, Indiana 46514.

unsecured creditors. See Case No. 19-31445, Dkt. Nos. 16 and 13. As such, the majority of the Debtors' approximately 7,000 creditors will not receive notice of these filings until after the proposed first day hearing on this motion. Moreover, no creditors committee has been appointed or can be appointed in time for a committee to review the Motion. Accordingly, the United States Trustee submits that there is a public interest in ensuring that assets of the Debtors' estates are not so speedily expended and on such limited notice.

The Debtors have failed to identify any of the specific vendors to whom the proposed payment of prepetition claims would be made. Nor have the Debtors specified the actual proposed amounts to be paid to the unidentified vendors. Moreover, although the Debtors seek joint administration of the seven Debtors, these cases have not been substantively consolidated and the Debtors have failed to identify which Debtor owes which vendor. The only information provided is a boilerplate recitation of case law on critical vendor motions, with the request for authority to pay unidentified vendors, unidentified amounts, owed by unidentified individual Debtors, all in contradiction to the normal priorities of distribution, without adequate information as to why such payments are truly critical and necessary. Consequently, it is not possible for parties in interest to understand fully the aggregate amount of money that is to be paid from the Debtors' estates.

It is important to note that the Debtors have a large body of potential creditors, possibly in the thousands, who have allegedly been significantly harmed by the Debtors' failure to make payments of their customers' withholding tax obligations to the Internal Revenue Service, the Indiana Department of Revenue, and other state taxing authorities. The Debtors seek to favor unnamed creditors in undisclosed amounts over the many individuals who have been harmed by the Debtors' prepetition misconduct and to have such payments made without adequate notice to

the many creditors who have been allegedly harmed. Given the Debtors' main secured lender's allegations of prepetition fraud by the Debtors, as set forth below, and that the Debtors' checks aggregating over $200 million were dishonored, immediate payment by the Debtors of any prepetition claims should be subjected to very close scrutiny prior to authorization of such payments.

## JURISDICTION

1. This Court has jurisdiction to hear this Objection under 28 U.S.C. §§ 157 and 1334.

2. Pursuant to 28 U.S.C. § 586, the U.S. Trustee is charged with the administrative oversight of cases commenced pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). This duty is part of the U.S. Trustee's overarching responsibility to enforce the bankruptcy laws as written by Congress and interpreted by the courts. *See United States Trustee v. Columbia Gas Sys., Inc.* (*In re Columbia Gas Sys., Inc.*), 33 F.3d 294, 295-96 (3d Cir. 1994) (noting the U.S. Trustee has "public interest standing" under 11 U.S.C. § 307, which goes beyond mere pecuniary interest).

3. Under 11 U.S.C. § 307, the U.S. Trustee has standing to be heard on any issue in any case or proceeding, including with regard to this Objection.

## BACKGROUND

4. Interlogic Outsourcing, Inc. ("Interlogic") and its affiliated Debtors provide payroll processing services across the nation, including payroll checks and related reports, payroll tax filing, electronic timekeeping, managing human resources information, and online payroll reporting. Among other things, for example, IOI Payroll advertises on its website that it can "handle calculating, filing, and depositing your taxes to give you freedom from risks

3

associated with payroll tax management/compliance."[2]  Its website further provides that, among the services provided to their customers, they "calculate, reconcile and deposit your payroll taxes and file all required payroll tax returns for federal, state and local authorities. Our payroll tax service makes your deposits and files accurate returns on-time, protecting you from very costly penalties of missing deadlines.  We provide you with easy-to-read quarterly reports that provide a summary of deposit details as well as copies of all payroll tax returns filed on your behalf."[3]

5. Prepetition, on July 10, 2019, KeyBank National Association ("KeyBank") filed a lawsuit in the United States District Court for the Northern District of Ohio, containing one count for breach of contract and one count for fraud against Interlogic and its now-former CEO, Najeeb Khan ("Khan"), and seeking temporary restraining orders and a preliminary injunction.

6. KeyBank provided various financial and cash management services to Interlogic, including maintaining company accounts and processing deposits into and transfers out of those accounts for purposes of Interlogic's business.

7. In its Verified First Amended Complaint for Temporary Restraining Order, Preliminary Injunction, Permanent Injunction and Damages ("KeyBank Complaint") (Case No. 19-cv-01566, Dkt. #3), KeyBank alleges that on July 3 and 5, 2019, $250 million total in checks drawn from accounts held by TimePlus and IOI Payroll at Lake City Bank in Warsaw, Indiana, was deposited into KeyBank, consistent with the Debtors' prior financial practices, apparently in furtherance of the Debtors' payroll services to Interlogic's customers.  KeyBank further alleges that Khan and Interlogic then directed the wire transfers out of KeyBank to Berkshire Bank, Wells Fargo Bank, N.A., and JPMorgan Chase aggregating $90 million on July 5, 2019, and wire transfers aggregating an additional $122.5 million on July 8, 2019.

---

[2] *See* IOI Pay, found at https://www.ioipay.com/index.php/payroll-tax-management/, August 12, 2019.
[3] *Id.*

4

8. KeyBank alleges it then received notices from Lake City Bank that the checks issued by TimePlus and IOI Payroll were being returned for insufficient funds, that Lake City Bank would dishonor the cleared checks, such that funds were not transferred from Lake City Bank to KeyBank sufficient to cover the approximate $212.5 million in wire transfers issued by KeyBank based on Khan's and Interlogic's instructions.

9. While temporary restraining orders and preliminary injunctions were entered as to Khan, Chase, Wells Fargo, and Berkshire, there is almost no information available regarding why Debtors had insufficient funds available to cover over $200 million transferred to KeyBank and then wired on to Chase, Wells Fargo and Berkshire, allegedly resulting in a failure of the Debtors' primary business service of paying its customers' tax obligations.

10. Indeed, the Debtors acknowledge in the Declaration of Daniel Wikel, Chief Restructuring Officer of Interlogic Outsourcing, Inc., in Support of Debtors' Chapter 11 Petitions and First Day Motions ("Wikel Declaration") that "Unbeknownst to the Debtors' employees and customers, Mr. Khan had perpetrated a significant and ongoing scheme of intentional financial mismanagement against the Debtors and their financial institutions." Declaration at ¶ 11. The Debtors further acknowledge that the "series of wire transfers" Khan initiated were "purportedly in aid of the Debtors' payroll-processing obligations, but which in reality were in furtherance of a sophisticated scheme of carefully orchestrated intercompany wires…". *Id.* Mr. Khan's actions resulted in "significant overdrafts at a majority of the Debtors' Payroll Processing Accounts, particularly at the Payroll Processing Accounts held with KeyBank." Declaration at ¶ 37.

11. The Debtors have not filed schedules and statements of affairs and they have not disclosed the full scope of the losses incurred by their customers and their customers'

employees', whose withholding taxes were not transmitted to the Internal Revenue Service and other state taxing authorities.

12.  On August 10 and 11, 2019 (the "Petition Dates"), the Debtors filed voluntary petitions for relief under chapter 11 of Title 11 of the Bankruptcy Code.

13.  An official committee of creditors has not yet been appointed in these cases.

14.  The Debtors have continued in possession of their properties and have continued to operate and maintain their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

15.  Concurrently with the Motion, the Debtors have filed certain other motions and applications also seeking certain "first day" relief on an emergent basis, including multiple other motions seeking authority to pay pre-petition obligations at the outset of these cases.

16.  In addition to such other motions seeking to pay multiple pre-petition obligations on extremely shortened notice, the Debtors have not yet filed their Schedules and Statements of Affairs and have filed an Emergency Motion for Entry of an Order Extending the Debtors' Time to File Schedules, Statements of Financial Affairs, and Other Documents Required by 11 U.S.C. § 521 and/or Rule 1007 of the Federal Rules of Bankruptcy Procedure and (II) Granting Related Relief, seeking an additional thirty days to file required documents, through and including September 24, 2019. *See* Docket No. 15.  Accordingly, it is not entirely clear what the likely universe of claims against the Debtors may be, or how many creditors are excluded from the favored treatment the Debtors seek for their designated "critical vendors."

## **ARGUMENT**

17.  Because the Debtors have failed to identify the vendors proposed to be paid, the specific services each particular vendor provides, or the actual amounts proposed to be paid to

each particular vendor, the Debtors have not provided adequate information and evidence to meet the high burden set forth by the Seventh Circuit in *In re Kmart Corp.,* 359 F.3d 866 (7th Cir. 2004), necessary to establish that payment of pre-petition obligations for the proposed critical vendors is warranted or that the Debtors will suffer irreparable harm if the relief sought is denied.

18.     As the Seventh Circuit explained,

> Section 105(a) allows a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Code. This does not create discretion to set aside the Code's rules about priority and distribution; the power conferred by § 105(a) is one to implement rather than override. Every circuit that has considered the question has held that this statute does not allow a bankruptcy judge to authorize full payment of any unsecured debt, unless all unsecured creditors in the class are paid in full.

*In re Kmart Corp.,* 359 F.3d at 871 (citations omitted).

19.     However, by the Motion, the Debtors seek to pay the unnamed creditors, who provide unidentified services and products, the full amount of their pre-petition debt, while an unknown number of other creditors in the same class may not be paid in full, or at all.

20.     As justification for the Motion, the Debtors assert that, absent payment in full to the unidentified "critical" vendors for the outstanding pre-petition obligations, the Debtors will be unable to continue in operation because the vendors will refuse to provide necessary services and products, causing a loss of customers. The Debtors also assert that there are no readily available alternate providers of the asserted critical products and services.

21.     The Debtors have not, however, adequately demonstrated that any particular vendor would cease doing business with the Debtors if it is not paid immediately. *See In re Kmart,* 359 F.3d at 868. Additionally, the Debtors have not shown any evidence that discrimination among the unsecured creditors is the only way to facilitate their reorganization or

7

that they would truly be as well off if the critical vendors are paid in full as they would be if the critical vendors are not paid in full.  *Id.*

22. The Debtors provide inadequate information regarding actual efforts made to find alternate vendors, providing only generalities regarding the process.  The Debtors provide inadequate information as to the uniqueness of the particular goods or products for which any of the critical vendors are to be provided payment in full.  Thus, they have not shown that dealing with any particular vendor is "virtually indispensable to profitable operations or preservation of the estate."  *In re CoServ, L.L.C.,* 273 B.R. 487, 498 (Bankr. N.D. Tex. 2002).

23. The Debtors do not show that any, or even most, of the vendors are not just as reliant on the Debtors' continuing business as the Debtors are reliant on receiving the particular vendors' continuing goods or services.  *See, e.g. In re Kmart,* 359 F.3d at 873 (observing that some supposedly critical vendors will continue to do business with the debtor because they must).  Nor have the Debtors shown that they have explored alternate terms of payment.  *See In re CoServ, L.L.C.,* 273 B.R. at 499 ("If payment is intended to assuage the claimant's concern about future dealings, a deposit, collect on delivery terms, payment on shipment and countless other devices are available that will not offend the general principle that prepetition claims should not be paid.").

24. The Debtors also fail to provide the Court and parties in interest with the model form of agreement to be sent to the proposed "critical" vendors or with the terms evidencing that the vendors will, in fact, provide the Debtors with ongoing goods or services.  As explained in *In re United Am., Inc.,* 327 B.R. 776, 784 (Bankr. E.D. Va. 2005),

> The court cannot allow the position [of critical vendor] to be abused. … [T]he remedy must be crafted to the circumstances of the case, … and should provide an adequate remedy …but not a windfall. … Part of a complete remedy must assure the debtor of the vendor's future performance.  There must be an obligation on the

part of the critical vendor to provide future supplies and services. He may not accept the pre-petition payment and then terminate an at-will relationship.

25.     Under such circumstances, at a minimum, prior to the entry of even an interim order, the Court should require the Debtors to provide creditors and parties in interest with adequate notice and an opportunity to understand the specifics regarding the amounts proposed to be paid, the identities of the creditors proposed to be paid, the specific services of each of such creditor to be paid, the terms of the under which the proposed critical vendors would continue to provide services, and the actual efforts made to obtain alternate providers or to negotiate the continuation of services without the necessity of immediate, post-petition payment of prepetition claims.  Adequate notice of the actual relief to be granted and adequate time to object is the minimum baseline required for these proposed extraordinary transactions.

26.     Most significantly, because of their failure to identify the true details of the identity of the providers, the actual proposed payments, terms of continued service, and the other information required by Seventh Circuit case law, Debtors have failed to meet their burden to demonstrate that there is a true threat to the business as a going concern, *see CoServ.,* 273 B.R. at 499, or to demonstrate, in fact, that denial of the Motion will result in immediate and irreparable harm.  Fed.R.Bankr.P. 6003.[4]

---

[4] Rule 6003 provides:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 20 days after the filing of the petition, issue an order granting the following:
> \*\*\*
> (b) a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition, but not a motion under Rule 4001.

27.     Further, the Debtors seek an unusually long extension of time to file their Schedules, Statements of Affairs and other required documents, up to September 24, 2019. Dkt. No. 16. Additionally, the Debtors seek permission to file consolidated matrices and to limit the notice parties during these crucial first phases of these cases. See Dkt. No. 13. Moreover, a creditors committee has not yet been appointed, so the majority of the creditors will likely have no notice and no voice in these proceedings until after many significant matters have been presented to the Court. This lack of notice to so many of the creditors militates against the entry of orders disposing of estate assets on such an expedited basis. Rather, the United States Trustee submits that the Court should deny the Motion and should preserve the status quo until all parties in interest have adequate notice and may make informed decisions as to whether they should respond or object to the relief sought.

## CONCLUSION

For the reasons set forth herein, the U.S. Trustee requests that the Court deny the Motion, or at a minimum, defer entry of an order authorizing any critical vendor payments until other creditors and parties in interest have at least some opportunity, even on shortened notice, to consider the Motion and submit responses to the Court. The U.S. Trustee reserves the right to submit additional objections in the event the Debtors provide further details regarding the substance of the proposed transactions, or to withdraw her Objection, as the case may be, should the Debtors provide the evidence to support the Motion.

Date: August 13, 2019                     Respectfully submitted,

NANCY J. GARGULA
United States Trustee

By:    /s/ *Susan J. Roberts*
Susan Jaffe Roberts
Assistant United States Trustee

>Office of the United States Trustee
>100 East Wayne Street, Suite 555
>South Bend, IN 46601
>(574) 236-8140
>Susan.J.Roberts@usdoj.gov