UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | **Voluntary Chapter 11** |
| TRINITY INVESTMENT GROUP LLC ) | |
| ) | **Case No. 18-10627** |
| Debtor. ) | |
| _____) | |

### RENEWED OBJECTION OF SIGMA RESTAURANTS, INC.
### TO DEBTOR'S DISCLOSURE STATEMENT
### DATED OCTOBER 11, 2018, AS AMENDED

**COMES NOW** Sigma Restaurants, Inc. (herein "Sigma") and objects to Debtor's Disclosure Statement (Doc. No. 177, filed 10/11/2018) as Amended (Debtor has not filed the proposed revised Disclosure Statement so there is not document no to reference to the Court), Exhibit 1 hereto, and its approval by this Court. In support, Sigma states as follows All references are to the Disclosure Statement as redlined by Debtor, Exhibit 1 hereto):

Disclosure Statement, § G, *Prepetition Equity Security Holders*

1. This Paragraph States, In Relevant Part:

    At the commencement of the case, Debtor submitted the following list of equity security holders indicating the following ownership of the membership interests in the limited liability company:

    Vision Investment Group, Inc.              81% ownership interest

    **Objection:**  James E. Miller II's ownership of Vision Investment Group Inc. (90%) should be set forth immediately, not 5 pages of fine print later. which we know to include the franchise holder ("Subway Franchisee"). There should be a more precise, graphic description of the relationships between Mr. Miller, Vision and Trinity. There is no acknowledgement of the conflicts of interest, which Objector submits are disqualifying, see comments/objections that follow, arising from these interwoven relationships, nor any explanation of any safeguards implemented to assure Debtor is not being abused because of deference to Mr. Miller's or Vision's interests in the analysis set forth in the Disclosure Statement.

Disclosure Statement, § I, *H. Franchise Ownership Structure,*

1. <u>The Subway Franchises</u>.

Debtor represents that:

> Vision Investment Group, Inc. has assigned the right to operate the stores to the Debtor. The assignment from Vision Investment to Trinity Investment is not in writing, but Trinity has been operating the stores since June 2013 under this assignment of the authority to operate the stores.
>
> **<u>Objection: What are the terms of the assignment of the right to operate?</u>**
>
> **<u>Objection: Debtor does not disclose the conflict of interest between his position as Subway Franchisee, control owner of Vision and Debtor's controlling officer.</u>**
>
> Note: This conflict of interest obviously impacts the Debtor's positions on terms and conditions of the assignment of the right to operate such as the term, i.e. length, of the assignment, or whether the assignment includes Debtor having the right to sell Debtor's operation subject only to Subway's approval owner/operator. It is this Objector's opinion that the only way to resolve this conflict is by removal of Mr. Miller from Debtor's management or ability to influence Debtor's management.
>
> "Such assignment does not, for example, assign the right to sell the sublease leasehold interest or to sub-sublease it"
>
> **<u>Objection: What are the terms of the assignment?</u>**
>
> **<u>Objection: What is the basis for the conclusion asserted?</u>**
>
> **<u>Objection: Debtor does not disclose the conflict of interest arising from Mr. Miller's position as Subway Franchisee, control owner of Vision and Debtor's controlling officer.</u>**
>
> Note: This conflict of interest obviously impacts the Debtor's positions on terms and conditions of the assignment. It is this Objector's opinion that the only way to resolve this conflict is by removal of Mr. Miller from Debtor's management or ability to influence Debtor's management.

2. <u>Value of a Subway® Store.</u>

   **<u>Objection: Debtor's Disclosure Statement does not provide a going concern valuation. The assumption is that Debtor will not be able to continue operating the franchises as they are owned by Jim Miller.</u>**

**Objection:**  The Disclosure Statement does not explain how it is that Debtor will lose its assigned franchise and lease operational/leasehold rights.

**Objection:**  No going concern data.

**Objection:** Debtor does not disclose the conflict of interest arising from Mr. Miller's position as Subway Franchisee, control owner of Vision and Debtor's controlling officer.

**Objection:** Debtor offers no support for the assumptions set forth in paragraph 2 for example Debtor. Simply asserts that going concern valuation is typically a multiple of the stores annual EBITDA, with no support for such conclusion. Debtor offers no alternative valuation methods for example as a multiple of store revenue.

**Objection:**  Debtor offers no explanation of whether Mr. Miller has the right to pledge of his rights as a franchisee and subtenant for the operation of Debtor as well as for any potential sale of the stores as a going concern

**Objection:** Vision is the actual assignor of rights to Trinity. Debtor offers no explanation of Vision's position on the terms and conditions of the assignment of the right to operate to Trinity or Vision's position on the proposed pledge of rights as a franchisee and subtenant for the operation of Debtor as well as for any potential sale of the stores as a going concern. Debtor offer's no disclosure that Vision in is Bankruptcy and what effect that has on the consent process.

**Objection:**  Debtor does not disclose that it purchased the equipment at issue for $3,875,000, exclusive of Goodwill.

**Objection:**  Debtor, demonstrating its absolute bias and disqualifying conflict of interest, asserts as fact, a legal conclusion that the "right to operate" is terminable "{at will," when the predominate legal authorities all conclude that in a situation where the contract is silent as to length of term, the Court will look to all the surrounding circumstances and infer a reasonable term.  Debtor never addresses that the Franchise Agreement under which the right to operate is assigned has a fixed 20-year term.

**Objection:**  Debtor, again demonstrating its absolute bias and disqualifying conflict of interest, asserts that the supposed concessions by Mr. Miller re his pledge to not revoke the assignment of rights to operate is new value. This presumes that the assignment is terminable at will, which as noted is a legal conclusion not supported by law or reason. It presumes that Mr. Miller controls this decision and not Subway or Vision. It presumes that Trinity did not obtain that "consent" when it agreed to pay $3875,000. For equipment which, if Debtor is to be believed is rendered no better than scrap value without the right to operate

**– it is a commercially unreasonable conclusion) It is a fiction created to mislead the Court and creditors into believing there is new value for ownership of the surviving entity when there is none (similarly, 'sweat equity' does not constitute new value.)**

I.     Store Leases

**Objection:  Debtor does not disclose that it has yet to pay the arrearages required as a condition precedent to resolution of the objections to assumption of the Sigma controlled store leases.**

**Objection:  Debtor does not disclose that as it has assumed the Store Leases, the remaining balances due for the terms of those leases are "administrative claims" which unless otherwise agreed must be paid in full in cash upon plan confirmation. Debtor offers no analysis of those claims, the amounts due thereunder, what resolutions have been made with landlords, and how they are to be funded.**

II.     C. Valuation/Liquidation Analysis.

**Objection:  The foregoing objections re. termination at will, the claimed right not to continue honoring the existing right to operate so long as Debtor is in compliance with the terms of the Franchise Agreement, are reasserted as they undermine the Valuation/Liquidation analysis.**

**Objection:  The foregoing objections re. disqualifying conflicts of interest are reasserted as they undermine the Valuation/Liquidation analysis.**

**Objection:  The foregoing objections re. the lack of basis for valuation or the consideration of alternative analysis are reasserted as they undermine the Valuation/Liquidation analysis.**

Dated: January 8, 2019                    Respectfully Submitted,

/s/ Norman A. Abood
Norman A. Abood (OH. Sup. Ct. #0029004)
101 Broadcast Building
136 N. Huron St.
Toledo, OH  43604-1139
Phone: 419-724-3700
Fax:    419-724-3701
E-Mail: norman@nabood.com
*Admitted Pro Hac Vice*
- *Attorney for Sigma Restaurants, Inc.*

## CERTIFICATE OF SERVICE

I, Norman A. Abood hereby certify that a true and exact copy of the foregoing was served on the 8th day of January 2019, through Notice of Electronic filing which provided service upon:

- Adrian Lee Halverstadt, III on behalf of Creditor Bippus State Bank alh@dhrglaw.com

- Daniel A. Cox on behalf of Creditor General Electric Credit Union foreclosure@woodlamping.com

- Daniel J. Skekloff on behalf of Debtor 1 Trinity Investment Group LLC dskekloff@hallercolvin.com, sbledsoe@hallercolvin.com

- Daniel J. Skekloff on behalf of Debtor 1 Vision Investment Group, Inc. dskekloff@hallercolvin.com, sbledsoe@hallercolvin.com

- Harley K. Means on behalf of Creditor Ford Motor Credit Company LLC hkm@kgrlaw.com, cjs@kgrlaw.com

- Leonard W. Copeland on behalf of U.S. Trustee Nancy J. Gargula leonard.w.copeland@usdoj.gov

- Michael P. O'Hara on behalf of Creditor First Merchants Bank mpo@barrettlaw.com Nancy J. Gargula USTPRegion10.SO.ECF@usdoj.gov

- Scot T. Skekloff on behalf of Debtor 1 Trinity Investment Group LLC sskekloff@hallercolvin.com, sbledsoe@hallercolvin.com

- Scot T. Skekloff on behalf of Debtor 1 Vision Investment Group, Inc. sskekloff@hallercolvin.com, sbledsoe@hallercolvin.com

- Thomas P. Yoder on behalf of Creditor First Merchants Bank tpy@barrettlaw.com

/s/Norman A. Abood
Norman A. Abood