UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

IN THE MATTER OF: )
)
TRINITY INVESTMENT GROUP, LLC ) CASE NO. 18-10627
)
)
Debtor )

### DECISION AND ORDER ON DISCLOSURE STATEMENT

On June 25, 2019

This matter is before the court, following trial, to consider the adequacy of the debtor's amended disclosure statement, filed on January 9, 2019, and the objections thereto filed by Sigma Restaurants, the debtor's largest creditor.

Before soliciting the acceptance or rejection of a plan, the Bankruptcy Code requires that creditors and equity security holders receive a disclosure statement which has been "approved . . . by the court as containing adequate information." 11 U.S.C. §1125(b). That is:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable such a hypothetical investor [typical of the holders of claims or interests] to make an informed judgment about the plan[.] 11 U.S.C. §1125(a).

As the statute suggests, the purpose of a disclosure statement is to provide creditors and equity security holders with the information they need in order to make an informed decision to vote for or against the plan. In re Rook Broadcasting of Idaho, Inc., 154 B.R. 970, 976 (Bankr. D. Idaho 1993); In re Ferretti, 128 B.R. 16, 18 (Bankr. D. N.H. 1991); In re Ligon, 50 B.R. 127, 130 (Bankr. M.D. Tenn. 1985); In re William F. Gable Co., 10 B.R. 248, 249 (Bankr. N.D. W.Va. 1981). The adequacy of the information in any particular disclosure statement is determined on a case-by-case basis and the issue is committed to the sound discretion of the bankruptcy court. Menard-Sanford

v. Mabey, 880 F.2d 694, 696 (4th Cir. 1989); Matter of Texas Extrusion Corp., 844 F.2d 1142, 1156-57 (5th Cir. 1988) cert. denied, 488 U.S. 926, 109 S.Ct. 311 (1988); In re Ferretti, 128 B.R. 16, 18 (Bankr. D. N.H. 1991); In re Snyder, 56 B.R. 1007, 1009 (Bankr. N.D. Ind. 1986); In re Stanley Hotel, Inc., 13 B.R. 926, 930 (Bankr. D. Colo. 1981).  The question is an issue of bankruptcy law, 11 U.S.C. §1125(d), and the proponent of the disclosure statement – here the debtor – bears the burden of proving its adequacy In re McGee, 2010 WL 9463258 n.1 (Bankr. N.D. Ind. 2010).

      The debtor is an LLC and operates several Subway restaurants in the Toledo, Ohio area. Only an individual (not a company) can be a Subway franchisee.  The individual franchisee can, however, assign the operation of the franchise to a company, which is what happened here.  Debtor's president, James Miller, is the franchisee and he assigned the right to operate the franchise to Vision Investments, a separate LLC of which he is the majority owner.  Vision, which is the majority owner of the debtor, in turn assigned the franchise right to the debtor.

      Sigma's objections to the disclosure statement are set out in the parties' joint pre-trial order, which was approved by the court.  A "fundamental purpose of a pre-trial order is to ensure that the parties have a common understanding as to what is and is not at issue in the litigation," In re Fort Wayne Telsat,Inc., 2009 WL 9073366 at *1 (Bankr. N.D. Ind. 2009), see also, Gorlikowski v Tolbert, 52 F.3d 1439, 1443-44 (7th Cir. 1995), which helps to prevent "gotcha" moments during trial. In the context of a disclosure statement this "means the objector should identify the disclosure statement's perceived deficiencies with some degree of specificity . . . and then the proponent, both in its portion of the  pre-trial order and at trial, devotes its efforts to proving why the objector's perceptions are not correct." McGee, 2010 WL 9463258 at *1, n.1.  According to the pretrial order Sigma has five objections to the disclosure statement:

> The first relates to preferential payments to or for the benefit of insiders which have not been disclosed.
>
> The second relates to the Subway franchise operating rights which, for various reasons, it contends have not been fully disclosed.
>
> The third relates to valuation and the disclosures concerning the value of debtor's goodwill and equipment.
>
> The fourth related to store leases and was withdrawn at trial.
>
> The fifth objection presents a legal rather than a factual issue and is that the debtor does not disclose that future lease payments constitute administrative claims which must be paid in full upon plan confirmation, unless otherwise agreed.

Joint Pretrial Order, Objector's Contentions ¶ E, filed Jan. 30, 2019. Although most of these objections appear to have been waived, because Sigma does not address them in its post trial brief, the court will discuss them for the sake of completeness.

As to the first contention regarding preferential payments to or for insiders there is no evidence that there were any such payments. No purpose would be served by disclosing something that did not happen or that nothing exists by reason of that non-event.

Sigma's second objection deals with the adequacy of the information regarding the debtor's operating rights. Section 1(H), pages 3-6, of the amended disclosure statement contains information concerning the franchise and debtor's operating rights. It discloses that Mr. Miller owns the franchise rights, assigned them to Vision and that the debtor operates the restaurants by oral assignment from Vision; the arrangement has been in effect since 2013; and has the approval of the franchisor. There is also information concerning limitations on the franchise rights, and the terms of the assignment, and debtor's obligations as a consequence. While one can always argue that more information could have been provided about something, the question is whether the disclosure statement contains enough relevant information to allow creditors to make an informed judgment

3

about the plan. The proposed disclosure statement does so and, to the extent something may be missing, Sigma's arguments do not indicate how that missing information could influence a creditor's decision regarding confirmation.

Sigma's third objection relates to the difference between the debtor's valuation of its equipment in 2013, $3,875,000, when it first acquired the franchise rights, and the value of the same equipment now, over 90% less. The disclosure statement values debtor's equipment and leasehold improvements at $55,000, identifies the source for that value (debtor's opinion), and explains how it was determined. That is sufficient, especially since there is no evidence that the present value of those assets is any different from what the debtor has provided.

Sigma's fourth contention was withdrawn at trial.

Sigma's fifth objection is that the disclosure statement does not disclose that future lease payments under assumed leases constitute administrative expense claims which must be paid in full upon confirmation. The argument is a legal one and is based upon In re Merry-Go-Round Enterprises, Inc., 180 F.3d 149 (4th Cir. 1999). Sigma's reliance on Merry-Go-Round is totally misplaced. That decision addressed the priority that should be given to a claim based upon a postpetition commercial lease entered into by a Chapter 11 debtor which was subsequently breached by the Chapter 7 trustee following conversion to Chapter 7. Id. at 152. Like Merry-Go-Round the debtor in this case has commercial leases, but there the similarities end. This is still a Chapter 11 case, not one which failed and converted to Chapter 7. Debtor's leases have been properly assumed, are being satisfactorily performed, and have not been breached. Furthermore, the court has not been given any authority to the effect that the amounts due under an executory contract or lease that has been assumed in a Chapter 11 case must be fully paid upon confirmation of a plan. To the contrary,

the relevant requirement for assumption – either in a plan or by itself – is "adequate assurance of future performance," 11 U.S.C. §§1123(b)(2), 365, not full payment upon confirmation.

In its post trial brief Sigma raised and spent most of the brief arguing an objection that was not contained in the parties' pre-trial order: a perceived conflict of interest between the debtor and its president, Mr. Miller.  As a general proposition, issues and arguments not identified in a pre-trial order may not be presented at trial.  See, SNA Nut Co. v. Haagen-Dazs Company, Inc., 302 F.3d 725, 732 (7th Cir. 2002) citing Gorlikowski, 52 F.3d at 1443-44.  See also, In re Hamama, 319 B.R. 851, 854 (Bankr. E.D. Mich. 2005) ("The Sixth Circuit has held that a party's failure to advance a theory of recovery in a pretrial statement constitutes a waiver of that theory.").  To do otherwise defeats one of the main purposes of such an order.  While the court has the discretion to consider such things in appropriate circumstances, this is not one of them.  Furthermore, the relationship between Vision, the debtor, and Mr. Miller is described in the disclosure statement and that information is sufficient to allow creditors to form their own conclusions concerning it.  See, Texas Extrusion, 844 F.2d at 1157.

The court concludes that the amended disclosure statement filed by the debtor on January 9, 2019, contains adequate information, as required by 11 U.S.C. § 1125; Sigma Restaurants objections are overruled; and the amended disclosure statement is approved.

SO ORDERED.

                                                */s/ Robert E. Grant*
                                       Chief Judge, United States Bankruptcy Court